RECEIVED
IN ALEXANDRIA, LA.

JAN - 9 2014

TONY R. MOORE, CLERK
                    DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| LISA COLVIN | : | DOCKET NO. 12-1829 |
| VS. | : | JUDGE TRIMBLE |
| BOARD OF SUPERVISORS OF THE UNIVERSITY OF LOUISIANA, ET AL | : | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the court is "Defendant's Motion for Summary Judgment" (R. #33) wherein the Board

of Supervisors of the University of Louisiana System (the "Board") and Dr. Stephen Richters, move

the court for summary judgment to dismiss with prejudice all claims of plaintiff, Lisa Colvin. Colvin

opposes the motion. For the following reasons the motion will be granted and plaintiff's claims will

be dismissed with prejudice.

## FACTUAL STATEMENT

Colvin was hired in 2003 as a Professor of Kinesiology by the Board at the University of

Louisiana in Monroe ("ULM").[1] In 2007, defendant Stephen Richters, the Provost and Vice President

of Academic Affairs for ULM, appointed Colvin to an administrative position as the Interim Director

of Graduate Studies and Research[2] and later to the position of Associate Dean of the Graduate

School in 2008 and 2009.[3]   The 2009 position was designated as a tenured Professor in the

---

[1] Board exhibit 1, Lisa Colvin depo., p. 16, line 16-22, R. #33-4.

[2] Id. p. 105-106; exhibit 2, Doc . # 3060.

[3] Id., p. 160; see also Appointment Agreement at Depo., exhibit 10.

Department of Kinesiology and was not subject to any guarantee of continuation.[4]

During the 2009-2010 academic year and while she was Associate Dean of the Graduate School, Dr. Colvin sought and was granted FMLA leave to undergo surgery to remove a pelvic tumor in April 2010.[5] Colvin also sought and was granted a two week extension from April 14, 2010 until April 28, 2010. Colvin complains that while on leave, Richters demanded that she review recommendations for faculty committee appointments and committee with faculty regarding committee appointments. On April 14, 2010, Colvin complained to ULM's Human Resources Department about the work assignments given to her by Richters while she was on leave. Colvin complains that ULM failed to intervene or investigate the issue.[6] Colvin further complains about remarks Richters made about her needing to come back to work.[7] Colvin also complains that Richters ignored her requests to extend her leave or to work part-time during her leave.[8]

During the 2009-2010 academic year and 10 days after she returned to work, Richters determined that Colvin was not an appropriate fit for continued appointment as Associate Dean of the Graduate School. Thus, Richters and ULM did not renew Colvin's contract as Associate Dean after the 2009-2010 academic school year.[9] Defendants maintain that the basis for their decision not to renew the position was that Colvin had difficulty maintaining a good working relationship with

---

[4] Id.

[5] Verified Complaint, R. #1, ¶ 8.

[6] Id., ¶ 9.

[7] Statement of Material Fact, ¶ 10. R. #35-1.

[8] Complaint ¶ 9, R. #1.

[9] Board exhibit 6, Stephen Richters depo., p. 31; Stephen Richters affidavit, exhibit 4.

2

other administrators and staff, Colvin was overwhelmed by stress associated with the position, and Colvin made poor administrative decisions.[10]

Following the 2009-2010 academic year, Dr. Eric Pani, then the Associate Provost at ULM, replaced Colvin and oversaw the Graduate School on an interim basis for a few months after which Dr. William McCown was appointed to oversee the Graduate School as interim director.[11]

After her contract as Associate Dean expired, Colvin received a 12 month appointment as the Department Head of Kinesiology. On October 12, 2010, Dr. Sandra Lemoine, the Dean of the College of Education and Human Development met with Colvin to discuss issues regarding Colvin's administrative position and Lemoine's expectations of Colvin as Department Head of Kinesiology.[12] On December 16, 2010, after seeing no improvement by Colvin over the next two months, Lemoine removed Colvin as Department Head and returned her to the status as a tenured Professor of Kinesiology with a nine month salary for the academic year.[13] Dr. Wilson Campbell was appointed as Department Head to replace Colvin on an interim basis.

Colvin complains that on May 9, 2011, she was also removed from her position on the University Athletic Committee and that in June 2011, she was informed by Richters that she would be expected to prepare to teach two new classes. Colvin complains that in June 2012, ULM's Dean of College of Education encouraged another professor to compete with her for an endowed

---

[10] Statement of Material fact #8; Richters affidavit, exhibit 4; exhibit 5, Dr. Eric Pani Depo., p. 53-55.

[11] Board exhibit #7, Bill McCown depo. p. 22-23.

[12] Board exhibit #1, Colvin depo, p. 203.

[13] Board exhibit #9, Sandra Lemoine affidavit; Board exhibit #1, Colvin depo., pp. 205-206.

professorship position even though the deadline to apply for the position had passed.

Colvin claims (1) she was discriminated against by Richters and ULM because of her gender, (2) Richters and ULM interfered with her FMLA leave by giving her work to do at home, and (3) Richters and ULM retaliated against her because she used FMLA leave.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[14] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[15]   A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[16] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[17]  Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[18] The burden requires more than mere allegations or denials of the adverse party's pleadings.  The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material

---

[14]  Fed. R.Civ. P. 56(c).

[15]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[16]  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[17]  Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[18]  Anderson, 477 U.S.  at 249.

fact or law.[19]  There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[20] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[21]

## LAW AND ANALYSIS

*Sovereign immunity*

ULM maintains that it is a State agency entitled to sovereign immunity from Colvin's FMLA claims citing 29 U.S.C. § 2611(4)(A)(iii) which incorporates the definition of a "public agency" from 29 U.S.C. § 203(x) because ULM is an agency of the State.  ULM relies on <u>Coleman v. Court of Appeals of Maryland.</u>,[22] wherein the Supreme Court held that "suits against States under this provision are barred by the States' immunity as sovereigns in our federal system."[23] ULM further relies on <u>Cozzo v. Tangipahoa Parish Counsel-President Government,</u>[24] to support its position that Louisiana has not waived its Eleventh Amendment sovereign immunity regarding suit in federal court. Colvin agrees that ULM's motion to dismiss the FMLA and state law gender claims due to its sovereign immunity should be granted.[25]  Furthermore Richters, sued in his official capacity as

---

[19]  <u>Celotex Corp. v.  Catrett,</u> 477 U.S. 317, 324 (1986).

[20]  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,</u> 475 U.S. 574, 587 (1986).

[21]  <u>Anderson,</u> 477 U.S. at 249-50.

[22]  132 S.Ct. 1327, (2012).

[23]  <u>Coleman,</u> 132 S.Ct. at 1332 (citing <u>Nelson v. University of Tex.,</u> 535 F.3d 318 (5th Cir. 2008).

[24]  279 F.3d 273, 280-81 (5th Cir. 2002).

[25]  R. #35, p. 17.

an employee of ULM is immune from suit under the Eleventh Amendment.[26]

Colvin contends that Richters, who has been sued also in his individual capacity is not entitled to sovereign immunity relying on Modica v. Taylor[27]. Colvin also contends that sovereign immunity is not applicable to her federal gender discrimination claims. Richters remarks that in Modica the "application of the [E]leventh [A]mendment to suit against state officials in their individual capacity depends on the circumstances."[28]

The Eleventh Amendment does not bar suits against officers in their individual capacities.[29] "Employees have a statutory right to seek monetary and equitable relief 'against any employer (including a public agency) in any Federal or State court of competent jurisdiction.' 29 § 2617(a)(2). The term 'employers' includes state officials acting in their individual capacities."[30]

Richters responds that all of his actions were taken only in his official capacity and that the complaint specifically alleges that any damages arising from FMLA violations were attributable to ULM, not to Richters.  Notably in Count One, Colvin alleges a violation of the Family and Medical Leave Act and that actions were taken on the "part of Richters and ULM.  These actions were taken at least in part because ULM resented the inconvenience which Colvin's absence from her job entailed and because ULM and Richters regarded Colvin's taking FMLA leave as a negative factor

---

[26]  Delahoussaye v. City of New Iberia, 937 F.2d 144, 149 (5th Cir. 1991).

[27]   465 F.3d 174 (5th Cir. 2006).

[28]  Id. at 183.

[29]  Hudson v. City of New Orleans,174 F.3d 677, 687 n.7 (5th Cir. 1999).

[30]  Modica, supra.

6

in her job performance."[31]  In Count Two regarding gender discrimination, Colvin complained about comments Richters made of her behavior being inappropriate and un-feminine, and that she needed to "dress more appropriately as a woman."[32]  Colvin then alleged that "[t]he above actions taken by ULM and the employees and agents for whom it is responsible were caused at least in part on account of Colvin's gender and those actions constitute gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. . . ."[33] Colvin further alleged that "ULM and the employees and agents for whom it is responsible knew that Colvin had federally protected rights not to be discriminated or retaliated against on the basis of her gender and gender-based complaints. In treating Colvin as they did, ULM and the employees and agents for whom it is responsible acted with reckless disregard and indifference to Colvin's federally protected rights."[34] Finally, Colvin alleges that "[d]efendant ULM is, therefore, liable unto Colvin for the damages set about below."[35]

The court finds that even though the complaint names Richters personally in his individual capacity in an attempt to hold him personally responsible, the allegations not only seek damages solely from ULM, but also allege that all actions taken by Richters were taken solely in his official capacity.  Therefore, we conclude that ULM is the real party in interest in this lawsuit and thus Richters is entitled to sovereign immunity pursuant to the Eleventh Amendment.

Next, defendants maintain that they are entitled to sovereign immunity from Colvin's state

---

[31] Complaint, R. #1, ¶ 8.

[32] Id., ¶ 13.

[33] Id., ¶ 15.

[34] Id., ¶ 17.

[35] Id., ¶ 18; referring to the damages Colvin is claiming.

law claims under the Louisiana Discrimination in Employment Act ("LDEA")[36] relying on Pennhurst,[37] wherein the Supreme Court held that the Eleventh Amendment also bars state law claims against a State agency in federal court. We find that Colvin's state law claims against Richters and ULM are likewise barred by the Eleventh Amendment.

*Colvin's employment discrimination claims*

Defendants maintain that Colvin failed to exhaust her administrative remedies with the EEOC and thus the court lacks jurisdiction over her employment discrimination claims.  Colvin has made no argument as to her failure to exhaust administrative remedies. Colvin filed her EEOC Charge of Discrimination on May 20, 2011. In her EEOC Charge, Colvin alleges that the earliest date of discrimination is May 17, 2010 and the latest date of discrimination is December 16, 2010. In both the instant Complaint and the EEOC charge, Colvin alleges two adverse employment actions: (1) removal as Associate Dean of the Graduate School (Colvin learned this on May 17, 2010 her salary was reduced on July 8, 2010) and (2) removal as Department Head of Kinesiology (Colvin learned this on December 16, 2010).  Colvin does not dispute these dates as to her removal as Associate Dean or Department Head of Kinesiology.

In Louisiana, a Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the conduct alleged or the claim is time-barred.[38]  Colvin filed her EEOC Charge on May 20, 2011 well beyond the 300 days allowed. Based on these dates, Colvin's removal

---

[36]  LSA-R.S. 23:332 et seq.

[37] 465 U.S. 89, 121-22 (1989) (a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment).

[38]  See Huckabay v. Moore, 142 F.3d 233 (5th Cir. 1998).

as Associate Dean of the Graduate School, (adverse employment action) is therefore untimely because she failed to file an EEOC Charge within the 300 day period. Accordingly, Colvin failed to exhaust her administrative remedy as to any claim she might have for her removal as Associate Dean of the Graduate School.

Defendants further maintain that any allegations that ULM or Richters discriminated against Colvin based on her gender prior to July 8, 2010 are also time-barred because Colvin failed to exhaust her administrative remedies as to those claims. Colvin alleges that in 2007 Richters commented that he expected Colvin to act in a "traditionally feminine" way and that she needed to dress "more appropriately as a woman." Defendants argue that these statement made in 2007 and used to allege gender discrimination are time barred because there were not presented to the EEOC within 300 days of the event. Thus, these events and any other events that occurred more than 300 days prior to the filing of the EEOC Charge are also time barred. Colvin makes no arguments as to defendant's assertion that these claims are time-barred, nor does she dispute the dates. Accordingly, Colvin's gender discrimination claims as to these allegations will be dismissed because she failed to exhaust her administrative remedies.

*Burden of proof under Title VII*

Defendants maintain that even if Colvin's claims were made timely, she has failed to meet her burden of proof. In an employment discrimination case alleging disparate treatment, the court's focus is on whether a genuine issue of fact exists as to whether the defendant intentionally discriminated against the plaintiff.[39] Title VII prohibits employers from discriminating with respect

---

[39] Grimes v. Texas Dept. of Mental Health & Mental Retardation, 102 F.3d 137, 139 (5th Cir. 1996); LaPierre v. Benson Nissan, Inc., 86 F.3d 444 (5th Cir. 1996).

9

to compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin.[40] Disparate treatment occurs when an employer treats one or more individuals less favorably than others because of membership in a protected group as defined by Title VII.[41] The evidentiary framework for analysis of Title VII disparate treatment claims was established by the Supreme Court in McDonnell Douglas Corp. v. Green.[42] In order to overcome a motion for summary judgment on a Title VII discrimination claim, the plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination.[43] If the plaintiff cannot prove the claim through direct evidence, the plaintiff may meet the initial burden by offering circumstantial evidence to create an inference of discrimination.[44]

In order to establish a *prima facie* case of employment discrimination under Title VII, a plaintiff must prove that: (1) the employee belongs to a protected class; (2) she sought and was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by [or passed over in favor of] someone outside the protected class.[45] The Fifth Circuit has extended the fourth prong of the plaintiff's *prima facie* case to include that the plaintiff "was replaced by

---

[40]   42 U.S.C. 2000(e)2(a).

[41]   International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843 (1977).

[42]   411 U.S. 792 (1973).

[43]   Id. at 802-04; Manning v. Chevron Chemical Co., 332 F.3d 874 (5th Cir. 2003); Haynes v. Pennzoil Co., 207 F.3d 296, 300 (5th Cir. 2000); Shackleford v. Dloitte & Touche, 190 F.3d 398, 404 (5th Cir. 1999).

[44]   Texas Dept of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981).

[45]   Price v. Federal Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

someone outside the protected class."[46]  The *prima facie* case of discrimination, once established, raises an inference of intentional discrimination, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions.[47]  The defendant's burden is satisfied by producing evidence, which "taken as true, would permit the conclusion that there was a non-discriminatory reason for the adverse action."[48]  Once the employer produces a legitimate nondiscriminatory reason, the presumption of discrimination dissipates.[49]

The burden then shifts back to the plaintiff to establish pretext and the ultimate question of whether the defendant intentionally discriminated against plaintiff.[50]  A plaintiff may either, (1) substantiate her claim of pretext by demonstrating that discrimination lay at the heart of the employer's decision,[51] or (2) submit sufficient evidence to conclude that discrimination was a "motivating factor" for the employer's decision.[52]  The ultimate burden of proving intentional discrimination, however, still rests at all times with the plaintiff.[53]

As to the issue of pretext, where the actor who allegedly discriminated against the plaintiff was the same actor that hired the plaintiff, the court must infer that discrimination was not the motive

---

[46] Id.

[47] McDonnell Douglas, 411 U.S. at 802.

[48]  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509,113 S.Ct. 2742(1993).

[49] See Wallace v. Methodist Hospital System, 271 F.3d 212 (5th Cir. 2001).

[50] Haynes v. Pennzoil Co., 207 F.3d at 300.

[51] Rubenstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 400 (5th Cir. 2000).

[52] Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 2155 (2003).

[53] Hicks, 509 U.S. at 507.

behind the adverse employment action.[54]

First, defendants remark that because Richters promoted Colvin to Associate Dean and also demoted her, and Lemoine promoted Colvin to Department Head and then demoted her; therefore, we must infer that discrimination was not the motive behind the adverse employment action. Defendants also note that they promoted Colvin to the highest academic position she had ever held and was paid more in her positions at ULM than in any other previous academic position.

Defendants attempt to articulate a legitimate, non-discriminatory reason for its actions; specifically, the undisputed fact that Colvin made various questionable, unauthorized administrative decisions during her term as Associate Dean and Department Head as follows: (1) using graduate school resources for a Kinesiology project; (2) speaking for other administrators while insulting another administrator; (3) showing an inability to handle a dispute with an administrative assistant, Pugh, while involving other administrative assistants in that dispute, (4) the unauthorized interference with long-time administrative assistant, Sonya Aulds' work schedule, causing Aulds to voluntarily terminate her position with ULM further causing the department to lose that administrative position; (5) projecting a poor attitude about ULM and her superior, Richters, to the public; (6) reprimanding a ULM employee (Robique) over whom Colvin had no authority; and (7) making negative comments about Lemoine's leadership and personal life.  Defendants argue that these actions and/or decisions by Colvin resulted in the decision not to reappoint Colvin as Associate Dean and to remove her as Department Head.  The court finds that Colvin's subjective belief that she had been discriminated against is insufficient to overcome summary judgment, and ULM and

---

[54] See Sreeram v. Louisiana State University Medical Center-Shreveport, 188 F.3d 314, 321 (5th Cir. 1999) citing Brown v. CSC Logic, Inc., 82 651, 657 (5th Cir. 1996)(citing Proud v. Stone, 945 F.2d 796 (4th Cir. 1991)).

Richters have set forth legitimate non-discriminatory reasons for Colvin's demotion and return to her position as a tenured Professor.

*Gender discrimination as to salary-based disparate treatment*

Colvin asserts that she has been discriminated against because she made less in her administrative positions than similarly situated males. Defendants submit as summary judgment evidence the Affidavit of Fred Baragona regarding the comparable salaries and tenure of male administrators versus female administrators. Mr. Baragona establishes that Dr. Thomas (with 35 years of academic experience at ULM) made a salary of $85,633 for the 2010-2011 academic year and Dr. Campbell (with 25 years of academic experience) made $72,600 for that year.  Both Drs. "Had more academic experience at ULM than Dr. Colvin. [55]  Colvin submits as summary judgment evidence a "Memorandum" she sent to Dr. Ken Alford which requests a review and increase of her salary for the 2012-2013 fiscal year. In that memo, Colvin suggests that her 9 month salary of $64,500 should be increased because Dr. Campbell made $8,100 more than her and  Dr. Thomas $21,133 more than her.[56] Defendants argue that the "hearsay" memorandum is not proper summary judgment evidence, and therefore should not be considered by the court.

Defendants further submit the affidavits of Drs. Lemoine and Richters to establish that the salaries of ULM's university professors were based on qualifications, academic job experience and available departmental budget.[57] The affidavits of Lemoine and Baragona establish that the salaries of women at ULM, including Colvin are comparable and are often higher than their male

---

[55] Affidavit of Fred Baragona, R. 33-15.

[56]  Plaintiff's exhibit L.

[57] See affidavit of Dr. Stephen Richters, R. #33-8; Affidavit fo Dr. Lemoin, R. #33-13.

counterparts at ULM.[58]  Colvin has submitted no summary judgment evidence to dispute this. The court agrees with defendants, that first, Colvin's Memorandum is hearsay and unfounded speculation, and furthermore, she has failed to submit summary judgment evidence to create a genuine issue of material fact as to gender discrimination as to salaries.

*Retaliation claims*

Defendants assert that Colvin's retaliation claims must be dismissed because the alleged "protected activity" took place after she was removed as the Associate Dean and as Department Head.  Covlin was not reappointed as Associate Dean after the 2009-2010 academic year and she had been removed as Department Head for the 2010-2011 academic year in December 2010. Colvine reported the alleged Discrimination to Larry Estess, the former human resources director at ULM on January 28, 2011.  Therefore, the alleged protected activity could not plausibly be Colvin's basis for retaliation.

Finally, Colvin asserts that she was retaliated against by ULM when allegedly Dr. Lemoine "encouraged" another professor to compete against her for an endowed professorship position. Colvin submits an e-mail wherein Dr. Lemoine merely notifies another professor that he/she may apply for the endowed professorship.  This email reveals nothing to establish that ULM was attempting to retaliate against Colvin.

Colvin also complains that her teaching assignment was changed in that she had to prepare for two new classes immediately before the semester began.  Colvin submits as summary judgment evidence a letter she authored to ULM complaining of an unmanageable workload.[59]   The letter is

---

[58]  Affidavit of Baragona, R. #33-15; Affidavit of Lemoine, R. #33-13.

[59]  R. #35, p. 6.

Colvin's subjective belief that she had an unmanageable workload.  Colvin has presented no summary judgment evidence to establish the "work load" of other professors for comparison and thus has failed to create a genuine issue of material fact for trial that she was being discriminated against.

## **CONCLUSION**

For the reasons set forth above, the motion for summary judgment filed by ULM and Richters will be granted dismissing with prejudice all claim against these defendants at plaintiff's costs.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this _9th_ day of January, 2014.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE